[Cite as *J.A.N. v. J.M.N.*, 2022-Ohio-41.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| J.A.N. | : | JUDGES: |
| | : | |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | Hon. Patricia A. Delaney, J. |
| | : | |
| J.M.N., ET AL. | : | Case No. 2021 CA 00024 |
| | : | |
| Defendant-Appellee | : | |
| | : | |
| -vs- | : | |
| | : | |
| C.H. | : | O P I N I O N |
| | : | |
| Intervenor-Appellant | : | |


CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Court
of Common Pleas, Domestic Relations
Division, Case No. 08-DR-156



JUDGMENT:                                    REVERSED AND REMANDED



DATE OF JUDGMENT ENTRY:      January 10, 2022



APPEARANCES:


For Plaintiff-Appellee:                         For Intervenor-Appellant:

LEE A. THOMPSON                          NICHOLAS P. WEISS
431 East Main Street                         N.P. WEISS LAW
Lancaster, OH 43130                         3091 Mayfield Rd. #320
                                                      Cleveland Heights, OH 44118

*Delaney, J.*

{¶1} Intervenor-Appellant C.H. appeals the July 14, 2021 judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division.

## FACTS AND PROCEDURAL HISTORY

### Divorce

{¶2} Plaintiff-Appellee J.N. ("Mother") and Defendant J.N. ("Father") are the biological parents of P.H., born in 2006 in the State of Ohio. Mother filed a complaint for divorce with the Fairfield County Court of Common Pleas, Domestic Relations Division in Case No. 2008 DR 156. At the time of the divorce, all parties were residents of the State of Ohio. The Judgment Entry Decree of Divorce issued on May 12, 2008 named Mother as the residential parent and legal custodian of P.H. Father was ordered to pay child support to Mother through the Fairfield County Child Support Enforcement Agency.

### Notice of Intent to Relocate

{¶3} On May 26, 2020, Mother filed a Notice of Intent to Relocate with the Fairfield County Domestic Court. She stated that she and P.H. were moving from Ohio to North Carolina for work and better weather. The relocation was to be effective on May 23, 2020. There was no objection from Father and Mother stated he had not been involved in P.H.'s life for years.

### Motion to Intervene and For Custody of P.H.

{¶4} On February 22, 2021, Intervenor-Appellant C.H., the Maternal Aunt of P.H., filed a Motion to Intervene and for Custody of P.H. with the Fairfield County Domestic Court under Mother's divorce case, Case No. 2008 DR 156. Maternal Aunt argued it was in the best interests of P.H. that she be granted custody of P.H. under R.C.

3109.04(A) and 3109.04(D)(2) and while there was a current child protective services investigation as to Mother and P.H. pending in North Carolina, the trial court should award Maternal Aunt custody before the North Carolina investigation was complete. Maternal Aunt filed an affidavit in support of her motion, in which she alleged that P.H. suffered from mental health issues requiring psychiatric care. Prior to Mother's relocation to North Carolina, she stated that Ohio Child Protective Services had investigated Mother and P.H. due to allegations P.H. made against Mother.

{¶5} Maternal Aunt also filed a Parenting Proceeding Affidavit pursuant to R.C. 3127.23(A). As part of the standardized form, Maternal Aunt stated that she did not have any "information of any cases that could affect the current case, including any cases relating to custody; domestic violence or protection orders; dependency, neglect, or abuse allegations; or adoptions concerning any child subject to this case."

{¶6} On February 24, 2021, the trial court granted Maternal Aunt's motion to intervene.

{¶7} On May 10, 2021, Mother's counsel filed a notice of limited appearance to respond to Maternal Aunt's motion for custody. Mother noted that Maternal Aunt had failed to serve Mother with the motion to intervene and for custody. Mother then filed a Motion to Dismiss Claim of Maternal Aunt Sua Sponte, or in the alternative, for a Non-Oral Hearing. If the trial court scheduled a non-oral hearing, Mother argued she was entitled to an award of attorney fees and sanctions.

{¶8} Attached to her motion to dismiss were documents related to *In the Matter of P.A.H.*, a dependency/abuse/neglect proceeding in the General Court of Justice District Court Division Juvenile Session of Brunswick County, North Carolina in Case No. 21 JA

31 ("North Carolina Juvenile Court"). On March 15, 2021, the Brunswick County Department of Social Services ("BCDSS") filed a Juvenile Petition with the North Carolina Juvenile Court alleging that P.H. was a neglected and dependent juvenile and requested the court hear the case to determine whether the allegations were true, and the juvenile needed the care, protection, or supervision of the state. According to the petition, the BCDSS became involved with P.H. and Mother on January 12, 2021. As part of its investigation, BCDSS spoke with Child Protective Services in Ohio regarding Mother and P.H. The BCDSS reported that Maternal Aunt contacted the BCDSS on February 16, 2021 to inform it that P.H. alleged to her that Mother was intoxicated and violent.

{¶9} The North Carolina Juvenile Court issued an Order for Nonsecure Custody on March 15, 2021. In its order, the North Carolina Juvenile Court found that "[b]ased upon the verified petition, this Court has jurisdiction over the subject matter of this proceeding and of the person of the juvenile." The North Carolina Juvenile Court further held P.H. should be placed in the nonsecure custody with

> the Department of Social Services of the county named above. The department may place the juvenile in a licensed foster home, * * * or the home of a parent, relative, nonrelative kin, or other person with legal custody of a sibling, which the Court hereby approves: DSS is investigating kinship placement. Should a placement be vetted, DSS may place the children in the DSS approved place.

A hearing was set on March 18, 2021 to determine the need for continued nonsecure custody, whether with DSS or someone else. A re-adjudication hearing was to be held on

April 8, 2021. According to Mother's motion to dismiss, P.H. had been placed in a therapeutic foster home in North Carolina.

{¶10} Mother contended in her motion that based on the dependency and neglect proceedings in the North Carolina Juvenile Court, the Fairfield County Domestic Court was an inconvenient forum to determine the custody of P.H. She argued that based on our decision in *Kemp v. Kemp*, 5th Dist. Stark No. 2010CA00179, 2011-Ohio-177, the trial court had the authority to sua sponte dismiss Maternal Aunt's custody proceeding.

{¶11} On May 24, 2021, Mother filed a Motion to Dismiss for Failure of Service. In her motion, she stated the May 10, 2021 Motion to Dismiss had been scheduled for a non-oral hearing on June 2, 2021, but that date is not reflected in the trial court record.

{¶12} Maternal Aunt filed briefs in opposition to Mother's motions to dismiss. In her response to the motion to dismiss her custody request, she argued the Fairfield County Domestic Court had exclusive and continuing jurisdiction over the determination of custody pursuant to R.C. 3127.16. She further argued that forum non conveniens should not apply to the decision because Maternal Aunt resides in Ohio and the Fairfield County Domestic Court has continuing jurisdiction over the matter.

{¶13} On June 1, 2021, Mother filed a reply memorandum to her motions to dismiss. She incorporated her affidavit of the events surrounding P.H. and the BCDSS investigation. She also submitted a certified copy of a May 27, 2021 Order on Pre-Hearing/Continuance Order issued by the North Carolina Juvenile Court. The order stated a hearing had been held on April 29, 2021 and based on the evidence presented, it had found the "following facts by clear, cogent and convincing evidence:

3. Pursuant to the rules of court established in Brunswick County and 7B-800.1, this case has been calendared for hearing this date for purposes of establishing the Court's jurisdiction and to determine if there would be an admission with regard to any of the allegations contained in the petition and to address any issues that the parties may stipulate to with regard to the factual allegations;

* * *

6. There is a custody order with regard to the minor child in Fairfield County, Ohio and was entered in May of 2008. [Mother] reports that she was granted full custody of the juvenile.

7. The child has resided in Brunswick County since May of 2020.

8. [Father] is listed on the child's birth certificate. [Mother] does not have contact information for [Father] or any of his family members. She believes he resides in Ohio.

* * *

11. That it is contrary to the health, safety and best interest of the child to be returned to the legal custody of her parents at this time and it is in the best interest of the minor child that her custody remain with the Department of Social Services.

* * *

13. The child is currently placed in a foster home and this placement satisfactorily addresses the child's needs in the least restrictive environment.

14. [Mother] has not provided the names of any family members she would like to be vetted for placement of the juvenile.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1. That the Court has jurisdiction over the parties and the subject matter.

{¶14} During these proceedings, Father had not made an appearance. The last known address for Father was in Ohio and on June 22, 2021, the Fairfield County Clerk of Courts served Maternal Aunt's motions on Father by certified mail to an Ohio address. Father continued to pay child support towards P.H. On July 13, 2021, the Fairfield County Child Support Enforcement Agency filed a motion to impound Father's child support payments to Mother while P.H. was not in Mother's custody. Mother responded that she did not object to impounding the monies if the order was terminated when P.H. was returned to her custody.

**Judgment Entry**

{¶15} On July 14, 2021, the Fairfield County Domestic Court issued its judgment entry on Mother's motion to dismiss Maternal Aunt's motion for custody of P.H. The trial court noted that a Juvenile Petition was currently pending in the North Carolina Juvenile Court, which had issued an order finding it had jurisdiction over P.H. to proceed with the petition alleging dependency and neglect.

{¶16} The Fairfield County Domestic Court referenced R.C. 2151.23(A)(1) that stated the juvenile court had exclusive original jurisdiction concerning children who were alleged to be abused, neglected, or dependent children. The trial court found that because the North Carolina Juvenile Court was exercising jurisdiction over P.H. in Case No. 21 JA 31, where it was alleged the minor child was neglected and dependent, the Fairfield

County Domestic Court was without jurisdiction to proceed on Maternal Aunt's motion for custody. Based on the lack of its jurisdiction for a dependency and neglect action under R.C. 2151.23, the trial court dismissed the pending motions.

{¶17} On July 26, 2021, Maternal Aunt filed a notice of appeal of the July 14, 2021 judgment entry. She also filed a motion for reconsideration with the Fairfield County Domestic Court, which the trial court did not rule upon before this appeal.

## ASSIGNMENTS OF ERROR

{¶18} Maternal Aunt raises four Assignments of Error:

{¶19} "I. THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A HEARING AND ALLOW THE PARTIES TO HOLD A HEARING ON AN ISSUE THAT THE TRIAL COURT TOOK UP SUA SPONTE.

{¶20} "II. THE TRIAL COURT ERRED WHEN IT DISMISSED THE CASE BECAUSE IT FAILED TO FOLLOW THE JURISDICTION PRIORITY RULE WHEN IT HAD CONCURRENT JURISDICTION.

{¶21} "III. THE TRIAL COURT ERRED BY DISMISSING THE CASE PURSUANT TO RATIONALE THAT IMPROPERLY EXPANDED THE SCOPE OF A JUVENILE COURT.

{¶22} "IV. THE TRIAL COURT ERRED WHEN IT IMPROPERLY CEDED JURISDICTION OVER THE CASE TO THE STATE OF NORTH CAROLINA."

## ANALYSIS

### I., II., III., and IV.

{¶23} In her four Assignments of Error, Maternal Aunt contends the trial court's July 14, 2021 judgment entry finding that the Fairfield County Domestic Court was without

jurisdiction to proceed on her request for custody of P.H. was in error. We consider the Assignments of Error together because they are interrelated.

### The Nature of the Two Custody Proceedings

{¶24} To thoroughly review the judgment of the Fairfield County Domestic Court's determination of jurisdiction, we first consider the nature of the pending Ohio and North Carolina custody proceedings. Maternal Aunt requests the Fairfield County Domestic Court to reallocate the parental rights and responsibilities so P.H. will be placed in her custody. The BCDSS requests the North Carolina Juvenile Court place P.H. in its temporary custody due to dependency and neglect allegations. The two proceedings take different postural positions but both affect Mother's custody of P.H.

<u>Reallocation of Parental Rights and Responsibilities</u>

{¶25} Maternal Aunt filed her motion for custody with the Fairfield County Domestic Court under Mother's divorce case to request the reallocation of parental rights and responsibilities pursuant to R.C. 3109.04. Child custody disputes under Ohio law fall within the coverage of one or two statutes, depending on the circumstances: R.C. 3109.04 or R.C. 2151.23. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 13.

{¶26} R.C. 3105.011 grants Ohio common pleas domestic relations courts jurisdiction "appropriate to the determination of all domestic relations matters," and R.C. 3109.04 dictates the rules and procedures for domestic relations courts to follow in child custody cases. *In re Hockstok, supra* at ¶ 14. R.C. 3109.04(A) applies to "any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child." R.C. 3109.04(D)(2) provides that if a court finds that "it is in the best interest of the child

for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings, together with as much of the record and the further information, in narrative form or otherwise, that it considers necessary or as the juvenile court requests, to the juvenile court for further proceedings, and, upon the certification, the juvenile court has exclusive jurisdiction."

{¶27} Maternal Aunt correctly stated that in a custody proceeding between a parent and nonparent under R.C. 3109.04, the domestic relations court may not award custody to a nonparent "without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child." *In re Hockstok, supra*, at ¶ 17 quoting *In re Perales*, 52 Ohio St.2d 89. 369 N.E.2d 1047 (1977), syllabus. Maternal Aunt argued to the Fairfield County Domestic Court that the preponderance of the evidence showing P.H.'s struggles in Ohio and North Carolina, the Ohio Child Protective Services investigation of Mother, and the neglect and dependency proceedings in North Carolina demonstrated Mother's parental unsuitability.

{¶28} R.C. 2151.23(A)(2) grants the juvenile courts exclusive original jurisdiction "to determine the custody of any child not a ward of another court of this state." In its July 14, 2021 judgment entry, the Fairfield County Domestic Court cited R.C. 2151.23(A)(1) as the basis for its lack of jurisdiction. R.C. 2151.23(A)(1) states the juvenile court has exclusive original jurisdiction "[c]oncerning any child who on or about the date specified in the complaint, indictment, or information is alleged * * * to be * * * a * * * abused,

neglected, or dependent child and, based on and in relation to the allegation pertaining to the child * * *."

Abuse, Neglect, Dependency Proceedings in North Carolina

{¶29} On March 15, 2021, the BCDSS filed a Juvenile Petition with the North Carolina Juvenile Court alleging that P.H. was a neglected and dependent juvenile and requested the court hear the case to determine whether the allegations were true, and the juvenile needed the care, protection, or supervision of the state. "In North Carolina, juvenile abuse, neglect, and dependency actions are governed by Chapter 7B of the General Statutes, commonly known as the Juvenile Code." *In the Matter of: K.R.*, 2021-NCCOA-671, 2021 WL 5823640 quoting *In re A.K.*, 360 N.C. 449, 454, 628 S.E.2d 753, 756 (2006). "Generally, the district courts of the State of North Carolina have exclusive, original jurisdiction over abuse, neglect, or dependency proceedings." N.C. Gen. Stat. § 7B-200(a) (2020). *Aslund v. Oslund*, 2021-NCCOA-664, 2021 WL 5823656, ¶ 13.

## UCCJEA Jurisdiction

{¶30} The issue presented to the Fairfield County Domestic Court was whether it had jurisdiction over Maternal Aunt's request for the reallocation of parental rights and responsibilities while a dependency and neglect action was pending in North Carolina. Ohio and North Carolina have adopted the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to determine whether a particular state has jurisdiction over a proceeding affecting child custody. In Ohio, the UCCJEA is codified at R.C. Chapter 3127. In North Carolina, the UCCJEA is found in the provisions of Article 2, Part 2 as codified in N.C.G.S. §§ 50A-201 through -210 (2019). *Matter of M.R.J.*, 378 N.C. 648, 2021-NCSC-112, 862 S.E.2d 639, 2021 WL 4344050, ¶ 35.

{¶31} The Ohio Supreme Court recognized the purpose of the UCCJEA was "'to avoid jurisdictional competition and conflict with courts of other jurisdictions' in custody matters" and to give "'jurisdictional priority and exclusive continuing jurisdiction to the home state.'" *Johnson v. Kelly*, 10th Dist. Franklin No. 14AP-1037, 2015-Ohio-2666, ¶ 15 citing *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 20-21.

Standard of Review

{¶32} The UCCJEA defines a trial court's subject matter jurisdiction to issue a child custody determination. *Martindale v. Martindale*, 4th Dist. Athens No. 14CA30, 2016-Ohio-524, 2016 WL 562864, ¶ 27. Appellate courts review a determination of subject matter jurisdiction with a de novo standard of review. *Johnson v. Kelly, supra* at ¶ 13. "Although a de novo standard of review is applied when determining the issue of the trial court's subject matter jurisdiction, once the subject matter jurisdiction is established, a trial court's decision as to whether to exercise its jurisdiction pursuant to the UCCJEA should only be reversed if the court committed an abuse of discretion." *Martindale v. Martindale*, 4th Dist. Athens No. 14CA30, 2016-Ohio-524, 2016 WL 562864, ¶ 35 citing *Beck v. Sprik*, 9th Dist. Medina No. 07CA0105–M, 2008–Ohio–3197, ¶ 7; *In re Collins*, 5th Dist. Guernsey No. 06CA000028, 2007–Ohio–4582, ¶ 15; *Rodriguez v. Frietze*, 4th Dist. Athens No. 04CA14, 2004–Ohio–7121, ¶ 22; *Kemp v. Kemp*, 5th Dist. Stark No. 2010-CA-00179, 2011-Ohio-177, ¶ 8; *Demarco v. Pace*, 11th Dist. Geauga No. 2019-G-0197, 2019-Ohio-3727, ¶ 31. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary,

unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### Temporary Emergency Jurisdiction

{¶33} Pursuant to the UCCJEA, a court may issue a temporary modification to another state's prior custody determination in an emergency circumstance. *See* R.C. Relevant to this case, N.C. Gen. Stat. § 50A-204(a) (2019) states as follows:

> (a) A court of this State has temporary emergency jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

{¶34} In this case, the record shows that based on dependency and neglect allegations, P.H. was placed in the emergency temporary custody of the BCDSS. No one disputes that North Carolina had temporary emergency jurisdiction to grant nonsecure custody of P.H. to the BCDSS.

{¶35} Pursuant to North Carolina law, orders issued under its authority to take temporary emergency jurisdiction are to remain in effect only until:

> (b) If there is no previous child-custody determination that is entitled to be enforced under this Article and a child-custody proceeding has not been commenced in a court of a state having jurisdiction under G.S. 50A-201 through G.S. 50A-203, a child-custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under G.S. 50A-201 through G.S. 50A-203. If a child-custody proceeding has not been or is not commenced in a court of a state

having jurisdiction under G.S. 50A-201 through G.S. 50A-203, a child-custody determination made under this section becomes a final determination if it so provides, and this State becomes the home state of the child.

Accordingly, the temporary emergency orders remain in effect until (1) a court of a state having jurisdiction under "initial child-custody determination," "exclusive, continuing jurisdiction," or "jurisdiction to modify determination" enters a new order or (2) a reasonably adequate period of time to obtain an order from that state expires. *In re K.R.*, 277 N.C.App. 218, 2021-NCCOA-155, 857 S.E.2d 149, ¶ 12. It has been held that a North Carolina court may only modify another state's custody determination where "(1) North Carolina can fulfill the UCCJEA's initial jurisdictional requirement itself under N.C. Gen. Stat §§ 50A-201(a)(1) or (a)(2), and (2) the other state releases jurisdiction to North Carolina or either court determines the children and their parents no longer reside in the other state. N.C. Gen. Stat. § 50A-203 (2019)." *In re K.R.*, 277 N.C.App. 218, 2021-NCCOA-155, 857 S.E.2d 149, ¶ 12.

{¶36} Under Ohio law, R.C. 3127.18(C) mandates that if a previous child custody determination has been issued in another state, an Ohio court may only issue limited temporary emergency orders until an order is obtained from the other state within the period of time specified or until the period expires. Further, upon learning that a child is the subject of a custody order issued by another state's court, the Ohio court is required to "immediately communicate" with the other state's court to determine how to address the emergency. R.C. 3127.18(D); *In re Collins*, 5th Dist. Guernsey No. 06CA000028, 2007-Ohio-4582, ¶ 18.

{¶37} R.C. 3127.17 expressly prohibits a court of this state from modifying a child custody determination made by a court of another state, other than a temporary emergency order, unless a court of this state has jurisdiction under R.C. 3127.15 (initial custody determination) and establishes one of the following criteria: (1) the court of the other state determines that it no longer has exclusive, continuing jurisdiction; (2) a court of the other state determines that a court of this state would be a more convenient forum under R.C. 3127.21 or (3) the court of this state or a court of the other state determines that the child and the child's parents do not presently reside in the other state. *In re Collins*, 5th Dist. Guernsey No. 06CA000028, 2007-Ohio-4582, 2007 WL 2492731, ¶ 18

{¶38} The May 27, 2021 Order on Pre-Hearing/Continuance Order issued by the North Carolina Juvenile Court recognized there was a previous child custody determination as to P.H. from Fairfield County, Ohio. The judgment entry also noted that P.H. had been a resident of North Carolina since May 2020. While North Carolina Juvenile Court arguably had temporary emergency jurisdiction over P.H., the issue to be determined in this case is whether North Carolina or Ohio has jurisdiction to proceed with the child custody determination. Maternal Aunt argues the Fairfield County Domestic Court incorrectly determined it was without jurisdiction to consider the child custody proceeding. We agree the trial court's July 14, 2021 determination that it lacked jurisdiction was in error for two reasons.

## First: R.C. 2151.23 is Inapplicable

{¶39} The Fairfield County Domestic Court determined in its July 14, 2021 judgment entry that it did not have jurisdiction pursuant to R.C. 2151.23. As we recently held in *Kallet v. Wilgus*, 5th Dist. Tuscarawas No. 2021 AP 01 0004, 2021-Ohio-1637, the

trial court's reliance on R.C. 2151.23 is misplaced because it does not address whether Ohio or North Carolina has subject matter jurisdiction to determine the custody of P.H. under the UCCJEA. *See State ex rel. M.L. v. O'Malley*, 144 Ohio St.3d 553, 2015-Ohio-4855, 45 N.E.3d 971, ¶11 ("Respondents undoubtedly have statutory jurisdiction to determine the custody of children in Ohio under R.C. 2151.23(A)(2). The dispute here is whether Ohio or New Jersey has jurisdiction to determine M.A.H.'s custody under the UCCJEA.")

{¶40} We agree with the Fairfield County Domestic Court that a neglect and dependency action is within the exclusive original jurisdiction of the juvenile court. Pursuant to R.C. 3109.04(D)(2), however, the domestic court has statutory jurisdiction to remove a child from the custody of the residential parent and legal custodian through a reallocation of parental rights and responsibilities. The statute provides that if the domestic court finds that "it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings, together with as much of the record and the further information, in narrative form or otherwise, that it considers necessary or as the juvenile court requests, to the juvenile court for further proceedings, and, upon the certification, the juvenile court has exclusive jurisdiction." The Fairfield County Domestic Court possessed the statutory jurisdiction to address Maternal Aunt's motion by committing the child to a relative of the child or by certifying the matter to the juvenile court for further proceedings. The possession of statutory jurisdiction does not, however, address the question of whether the Fairfield County Domestic Court could permissibly exercise its jurisdiction.

## Second: Exclusive, Continuing Jurisdiction in Ohio

{¶41} R.C. 3127.15(A) provides jurisdiction for an Ohio court "to make an initial determination in a child custody proceeding." An "initial determination" is "the first child custody determination concerning a particular child." R.C. 3127.08(B)(8). The Fairfield County Domestic Court made the initial determination of P.H.'s custody pursuant to the Divorce Decree naming Mother as the residential parent and legal custodian.

{¶42} The Fairfield County Domestic Court had jurisdiction over the initial determination of custody because it was the "home state of the child on the date of the commencement of the [divorce] proceeding." R.C. 3127.15(A)(1). UCCJEA defines the "home state" of the child as the "state in which a child lived with a parent * * * for at least six consecutive months immediately preceding the commencement of a child custody proceeding * * *." R.C. 3127.01(B)(7). A "child custody proceeding" is one that determines issues of "legal custody, physical custody, parenting time, or visitation with respect to a child is an issue." R.C. 3127.01(B)(4). It may include "a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, parentage, termination of parental rights, or protection from domestic violence." R.C. 3127.01(B)(4).

{¶43} "Under the UCCJEA, the court in which a custody decree is originally issued retains continuing jurisdiction over issues of custody arising from that decree." *North v. North*, 9th Dist. Summit No. 24297, 2008-Ohio-6438, ¶ 7 quoting *Thebeau v. Thebeau*, 4th Dist. No. 07CA34, 2008-Ohio-4751, ¶ 17. R.C. 3127.16 provides for the exclusive continuing jurisdiction over cases in which an initial custody determination has been made as follows:

Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state that has made a child custody determination consistent with section 3127.15 or 3127.17 of the Revised Code has exclusive, continuing jurisdiction over the determination until the court or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Accordingly, because the Fairfield County Domestic Court made the initial child custody determination in the Divorce Decree, it has exclusive continuing jurisdiction over a child custody determination regarding P.H.

{¶44} The Fairfield County Domestic Court's jurisdiction may be continuing, but it need not be exclusive. *Johnson v. Kelly*, 10th Dist. Franklin No. 14AP-1037, 2015-Ohio-2666, ¶ 17. An Ohio court must relinquish the continuing exclusive jurisdiction under R.C. 3127.16 when there is a determination by an Ohio court or the court of another state that *the parents and the child do not reside in Ohio.* (Emphasis added.) *Kemp v. Kemp*, 5th Dist. Stark No. 2010-CA-00179, 2011-Ohio-177, ¶ 9; *Johnson v. Kelly*, 10th Dist. Franklin No. 14AP-1037, 2015-Ohio-2666, 2015 WL 3964176, ¶ 16. *See Slaughter v. Slaughter*, 10th Dist. Franklin No. 11AP-997, 2012-Ohio-3973 at ¶ 22–37 (finding that the Ohio trial court properly determined that it lacked jurisdiction where neither parents nor child resided in Ohio, and a court in Florida, where mother and child resided, had asserted jurisdiction); *Lafi v. Lafi*, 2nd Dist. No. 2007 CA 37, 2008–Ohio–1871, ¶ 4–5, 13 (finding no error in a determination that an Ohio trial court lacked jurisdiction where neither parents nor child resided in Ohio and a Michigan court, where mother and child resided, had indicated an intent to exercise jurisdiction). While the home state determination only

considers the state in which the child lives with *a parent*, the determination of exclusive continuing jurisdiction considers the residences of *the parents*, Mother *and* Father.

{¶45} Based on the plain language of R.C. 3127.16, the loose thread in the determination of exclusive continuing jurisdiction is Father. While Mother and P.H. reside in North Carolina and have resided there for more than nine months prior to either the Ohio or North Carolina custody proceedings, the record in this case shows that Father may still reside in Ohio. The North Carolina Juvenile Court acknowledged Father in its judgment entry and that Mother believed he lived in Ohio; however, the Fairfield County Domestic Court did not address Father's residence. The Fairfield County Clerk of Courts completed service by certified mail on Father at an address located in Ohio. Arguably the record shows that Father has not been involved in P.H.'s life, but Father's parental rights have not been terminated as to P.H. The record shows that Father continues to pay child support to Mother for P.H. If there was evidence that both parents had relocated out of Ohio, there  might be  a genuine issue  whether Ohio has exclusive and continuing jurisdiction, but because the record at this time shows that Father resides in Ohio, it appears the Fairfield County Domestic Court possesses exclusive continuing jurisdiction of the custody proceeding pursuant to R.C. 3127.16. *North v. North*, 2008-Ohio-6438, ¶ 9.

### Reversal and Remand

{¶46} Upon review of the July 14, 2021 judgment entry by the Fairfield County Domestic Court, we find the trial court erred as a matter of law when it used the incorrect statutory basis to determine that it was without jurisdiction to consider Maternal Aunt's motion for reallocation of parental rights and responsibilities. The July 14, 2021 judgment

is reversed, and the matter remanded to the Fairfield County Domestic Court to conduct analysis under the UCCJEA and R.C. Chapter 3127 to determine whether Ohio or North Carolina possesses jurisdiction over the child custody proceedings and, if necessary, whether Ohio or North Carolina would be the more convenient forum for the custody proceedings.

{¶47} Maternal Aunt's second, third, and fourth Assignments of Error are sustained.

### Hearing Requirement

{¶48} In Maternal Aunt's first Assignment of Error, she argues the trial court erred when it did not hold a hearing before rendering its judgment on July 14, 2021. However, based on our reversal and remand of the July 14, 2021 judgment entry, we find her first Assignment of Error to be premature.

## CONCLUSION

{¶49} The July 14, 2021 judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, is reversed and the judgment remanded to the trial court for further proceedings consistent with this Opinion and law.

By: Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.