[Cite as *In re R.R.*, 2024-Ohio-1382.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: R.R. | : | APPEAL NO. C-230327<br>TRIAL NO. F20-1207X |
|  | : |  |
|  | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 12, 2024

*DeBra Law, LLC,* and *Ryan L. DeBra*, for Appellant Mother,

*Buechner Haffer Meyers & Koenig Co., LPA,* and *David A. Miller*, for Appellee Father.

**ZAYAS, Presiding Judge.**

{¶1}    This appeal presents the question of the jurisdiction of the Hamilton County Juvenile Court over the instant action under the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA").  The juvenile court determined that it lacked jurisdiction over the matter after finding that, although the parties lived in Ohio when the child was born, neither party nor the child remained in Ohio. Appellant mother now appeals from the juvenile court's judgment, arguing that the juvenile court maintained exclusive, continuing jurisdiction over the matter where mother never changed her residency for a period significant enough to establish a "home state" in another jurisdiction.  For the reasons that follow, we disagree and affirm the judgment of the juvenile court.

## I. Procedural and Factual Background

{¶2}    The instant matter was initiated when father filed an R.C. 2151.23(A)(2) petition for shared parenting of R.R. on December 7, 2020, a few days after her birth. The record indicates that both parents were living in Ohio at the time after relocating here during the Coronavirus pandemic.  A few months later, an agreed order was entered establishing travel permissions for mother to travel to New Zealand from April 2021 to August 2021 for work and interim parenting time upon her return.  The record then indicates that the matter was continued for several months as neither parent was from Cincinnati and the parents were hopeful that they could reach a full agreement once their permanent location could be established.  The matter was then continued again for several more months thereafter for the same reason as mother was still traveling for work and had not established her long-term residence.  The juvenile court's entry continuing the matter indicated that mother planned to reside in California upon her return and father planned to move to the same area as mother so

that the parenting issues could be worked out. A subsequent January 2022 entry from the juvenile court—which referred the case to mediation—indicated that both parents were now residing in Studio City, California, less than a mile from each other.

{¶3} In March 2022, mother filed a motion to again travel with R.R. for work and for a modification of father's parenting time. In her affidavit attached to her motion, mother averred that she was an actress currently under contract for several years to work in New Zealand from approximately mid-April to mid-August each year and asserted that it was in R.R.'s best interest to go with her. An agreed order was entered the following month allowing mother to travel to New Zealand for work and allowing father to visit and/or have contact with R.R. while she was in New Zealand.

{¶4} In October 2022, the juvenile court indicated in an entry that both parents and R.R. were living in California and had been living there for over a year. The entry stated, "Father may file a motion to ask that [the] matter be transferred to California or he may withdraw his petition here causing the matter to be dismissed and refile in California. He also may seek shared parenting here. If so, he MUST file a proposed shared parenting plan." (Emphasis sic.)

{¶5} In March 2023, father filed the motion to transfer the case to the Los Angeles County, California Superior Court ("the California court"). The motion asserted that he and mother relocated to Hamilton County, Ohio, in early 2020 due to fears of the Coronavirus pandemic, but neither party nor R.R. now live in Ohio. Instead, they live within walking distance of each other in Studio City, California, in Los Angeles County. The motion further asserted that father—through his California counsel—had registered the juvenile court's orders and entries in the California court. Attached to the motion was the registration form filed with the California court on

December 27, 2022, which included a California court case number ending in 398 ("the California case").

{¶6} The juvenile court held a hearing a few days later, and the entry from that day indicates that mother opposed the transfer because of her plan to move back to Ohio soon. However, father reported that the California court had issued a temporary restraining order in the California case prohibiting mother from leaving the state with R.R. The juvenile court indicated in the entry that it would contact the California court pursuant to the UCCJEA.

{¶7} Subsequently, mother filed a response to father's motion to transfer, arguing that she now lived in Ohio and Ohio had continuing, exclusive jurisdiction over the matter under the UCCJEA. Father responded, questioning mother's assertion that she now lived in Ohio but arguing that Ohio was nevertheless an inconvenient forum. The juvenile court held a hearing on the matter in May 2023.

{¶8} Father testified at the hearing that he currently lives in Los Angeles County, California, and has been a resident there since 2019. He said the parties found out mother was pregnant during the Coronavirus pandemic and came to Cincinnati in August 2020 because mother wanted to be closer to her family while she was pregnant. He testified that they agreed to move back to Los Angeles in April 2021, when mother heard she was going to be filming in New Zealand. He set up a one-bedroom apartment for him and R.R. in Los Angeles and mother came to Los Angles one week before she left to film the show and stayed in a hotel. Mother returned to California in September 2021 where she stayed in an Airbnb for a few weeks before getting an apartment in Studio City in November 2021, less than a mile away from his residence. Father testified that he served mother with the papers from the California court in January 2023 after a dispute arose regarding R.R. The following month, mother called

4

Los Angeles County child protective services ("CPS") on father, but CPS closed the referral the same day without proceeding with any charges. Father said it "wasn't a case," and there was absolutely no truth to the allegations. Father testified that he then had issues getting mother to provide him his regular parenting time with R.R. and mother ultimately told him in March 2023 that she was in Ohio when he asked to see R.R. When asked where R.R. had spent the most continuous time residing, father answered mother's apartment in Studio City, which she has maintained for over year.

{¶9} Mother testified at the hearing that she currently lives in Cincinnati and has lived there since March 2023. She said that she moved to Ohio in April 2020 to be closer to her family when she was pregnant and while her industry was shut down due to the Coronavirus pandemic. She testified that she went to New Zealand from April 2021 to September 2021, and then did a sublet in Los Angeles when she returned. She remained in Los Angeles until she returned to New Zealand the following year in April 2022. She maintained her lease in Los Angeles while she was filming and again returned to Los Angeles when she left New Zealand in August 2022. She remained there until she returned to Ohio in March 2023. When asked if she planned to stay in the Cincinnati area, she said yes. She testified as to how it would be possible to live in Cincinnati and still be an actor. She denied that she would move back to Los Angeles if the case was transferred and said she had a medical appointment set up for R.R. in Cincinnati to follow up on the concerns that she alleged to CPS in Los Angeles.

{¶10} The juvenile court ultimately decided that the California court was the appropriate jurisdiction under the UCCJEA as it lacked exclusive, continuing jurisdiction over the matter where the court was "unpersuaded" that mother now resided in Ohio. Alternatively, the juvenile court found that, even if it had jurisdiction,

it declined to exercise such jurisdiction under R.C. 3127.21 as Ohio was an inconvenient forum when compared to California.

{¶11} Mother timely appealed from the juvenile court's judgment, and now argues in a single assignment of error that the juvenile court erred in finding that it lacked exclusive, continuing jurisdiction over the matter.

## II. Law and Analysis

### A. Standard of Review

{¶12} The UCCJEA establishes a trial court's subject-matter jurisdiction over child-custody determinations. *J.A.N. v. J.M.N.*, 5th Dist. Fairfield No. 2021 CA 00024, 2022-Ohio-41, ¶ 32, citing *Martindale v. Martindale*, 4th Dist. Athens No. 14CA30, 2016-Ohio-524, ¶ 27. "Appellate courts review a determination of subject matter jurisdiction with a de novo standard of review." *Id.*, citing *Johnson v. Kelly*, 10th Dist. Franklin No. 14AP-1037, 2015-Ohio-2666, ¶ 13. Once subject-matter jurisdiction is established, a trial court's decision as to whether to exercise jurisdiction pursuant to the UCCJEA is reviewed for an abuse of discretion. *Id.*, citing *Martindale* at ¶ 35.

### B. The Trial Court Correctly Determined Jurisdiction

{¶13} A court of this state has jurisdiction to make an "initial determination" in a child-custody proceeding if, among other things, Ohio is "the home state of the child on the date of the commencement of the proceeding."[1] R.C. 3127.15(A)(1). If the

---

[1] "Initial determination" is defined as, "the first child custody determination concerning a particular child." R.C. 3127.01(B)(8).

"Child custody determination" is defined as "a judgment, decree, or other order of a court that provides for legal custody, physical custody, parenting time, or visitation with respect to a child." R.C. 3127.01(B)(3). Of note, "child custody determination" includes "permanent, temporary, initial, and modification orders." *Id.*

child is less than six months old, the "home state" is "the state in which the child lived from birth with [a parent]." R.C. 3127.01(B)(7).

{¶14} Here, R.R. was merely a few days old at the time that father filed his petition for shared parenting, and both parents and R.R. lived in Ohio at the time. Therefore, it is unchallenged that Ohio was R.R.'s home state at commencement of the proceedings. However, both parents and R.R. subsequently moved away from Ohio.

{¶15} Under R.C. 3127.16, a court that has made a "child custody determination" consistent with R.C. 3127.15 "has exclusive, continuing jurisdiction over the determination until the court or a court of another state determines that the child, [and] the child's parents * * * do not presently reside in this state."

{¶16} Ohio courts of appeals have held that an Ohio court must relinquish exclusive, continuing jurisdiction under R.C. 3127.16 when neither parent nor the child reside in Ohio and another court has exerted or indicated its intent to exercise jurisdiction over the matter. *Johnson*, 10th Dist. Franklin No. 14AP-1037, 2015-Ohio-2666, at ¶ 16-17, citing *Slaughter v. Slaughter*, 10th Dist. Franklin No. 11AP-997, 2012-Ohio-3973, ¶ 22-37, and *Lafi v. Lafi*, 2d Dist. Miami No. 2007 CA 37, 2008-Ohio-1871, ¶ 4-5, 13; *compare, e.g., V.R.T. v. Celebrezze*, 8th Dist. Cuyahoga No. 108116, 2019-Ohio-2241, ¶ 7-10 (explaining that Ohio nevertheless retains continuing jurisdiction—albeit not exclusive—when the parties leave the state, but no other court exerts jurisdiction).

{¶17} However, mother argues that, despite her move away from Ohio, she never lost her Ohio residency under R.C. 3503.02(B). R.C. 3503.02(B) is a statutory provision concerning the rules for establishing residence for voting purposes. Mother points to no authority to support her assertion that this statute would be applicable when determining whether a parent resides in Ohio for the purposes of R.C. 3127.16.

{¶18} Additionally, R.C. 3503.02(B) requires consideration of an intent to return and "[t]he drafters of the UCCJEA expressly rejected the premise that traditional principles governing determination of domicile, as opposed to residence, should apply in determining jurisdiction over child custody matters under the act." *Slaughter* at ¶ 30. Rather, " '[w]hen the child, [and] the parents * * * *physically leave the State to live elsewhere*, the exclusive, continuing jurisdiction ceases.' " (Emphasis sic.) *Id.*, citing Uniform Child Custody Jurisdiction and Enforcement Act, Prefatory Note.

{¶19} Mother physically left Ohio in April 2021 and lived elsewhere for the remainder of 2021, all of 2022, and the beginning of 2023. At the time that father filed the Ohio order with the California court in December 2022, both parties were living in California and had been living in California for over a year, at least. Father served mother with notice of the California action in January 2023 and then filed the motion to transfer with the juvenile court in March 2023. There is no dispute that mother, father, and R.R. "presently" lived in California at the time the motion to transfer was filed.

{¶20} Further, the record indicates that the California court was exerting jurisdiction over the matter at the time the motion to transfer was filed. And even if no such indication was in the record, it is clear from the juvenile court's judgment that it was in communication with the California court and confirmed that the California court was exerting jurisdiction over the matter. *See* R.C. 3127.09(C).

{¶21} Thus, at the time that the motion to transfer was filed, neither mother nor father nor R.R. was presently residing in Ohio and the California court was exerting jurisdiction over the matter. Consequently, the juvenile court correctly determined that it lost exclusive, continuing jurisdiction under R.C. 3127.16. *See*

*Slaughter*, 10th Dist. Franklin No. 11AP-997, 2012-Ohio-3973, at ¶ 27 ("[T]he determinative fact in this case was whether [mother] or [father] or any of their children were residents of Ohio at the time [mother] filed her motion to transfer venue. If none of these individuals was a resident of Ohio at that time, the domestic relations court no longer had continuing jurisdiction."). Mother's subsequent move back to Ohio—even if true—does not change this result. *See In re M.R.F.-C.*, 2d Dist. Montgomery No. 28683, 2020-Ohio-4400, ¶ 4-7, 35-36 (holding that the Ohio court lost exclusive, continuing jurisdiction where the parents and children moved to Michigan for a number of years and a Michigan court indicated its intent to exercise jurisdiction over the custody matter, even though mother subsequently asserted that she and the children again resided in Ohio).

{¶22} We note that mother also argues that there was insufficient evidence to support the juvenile court's determination that Ohio was an inconvenient forum under R.C. 3127.21. However, we decline to address this argument as our holding that the juvenile court correctly determined its jurisdiction under R.C. 3127.16 renders this issue moot.

### III. Conclusion

{¶23} For all the foregoing reasons, the juvenile court correctly determined that it lost exclusive, continuing jurisdiction under R.C. 3127.16 as the evidence established that both parents and R.R. moved away from Ohio after commencement of the action and did not "presently" reside in Ohio at the time the motion to transfer was filed and the California court was exerting jurisdiction over the matter. Therefore, we overrule the sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **KINSLEY, JJ.,** concur.

Please note:

>The court has recorded its own entry this date.