[Cite as *State v. Dod*, 2024-Ohio-4807.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240197 |
| | | TRIAL NO. B-2203417 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| JOHN DOD, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed, Sentence Vacated, and Cause Remanded

Date of Judgment Entry on Appeal: October 4, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**BERGERON, Judge.**

{¶ 1}   In an attempt to contact his children, defendant-appellant John Dod forcibly entered the home of M.S., his erstwhile companion.  As a result of the incident, he was charged with several offenses and ultimately pleaded guilty to a violation of a protection order and a reduced charge of burglary of the third degree.  The court sentenced and resentenced him several times to community control before eventually imposing a 48-month prison sentence due to his repeated violations.  He now appeals, arguing that the trial court lacked jurisdiction to alter his final community control sentence, it failed to provide him the requisite warnings for any noncompliance, and it failed to consider the required sentencing guidelines and factors in imposing the 48-month prison sentence.  After a review of the evidence and record, we reverse, vacate Mr. Dod's prison sentence, and remand this cause for further proceedings based on his first two assignments of error. Based on the disposition of those assignments, it renders his third assignment of error moot.

I.

{¶ 2}   In July 2022, Mr. Dod gained entry to M.S.'s home through a window and locked her and her children in the bathroom without a way to exit.  Subsequently, he was charged with violating a protection order and aggravated burglary under R.C. 2919.27(A)(1) and 2911.11(A)(1), respectively.  Mr. Dod ultimately pleaded guilty, on March 1, 2023, to violating the protection order, which carried a potential prison sentence of up to 12 months, and a reduced charge of burglary of the third degree, which carried a potential prison sentence of up to 36 months.  A few weeks later, the trial court, concerned with his habitual violations of protection orders, sentenced Mr. Dod to intensive supervision probation, ordering him to stay away from M.S. and warning him that if he violated the sentence and order, he could face 12 and 36 months in prison for the two charges.

2

**{¶ 3}** After pleading guilty, Mr. Dod was extradited to Oklahoma to resolve unrelated charges, where he remained beyond the resolution of those matters. As a result of that, along with an additional criminal trespass charge, in January 2024 ("January hearing") he was charged with a community control violation. At the January hearing, the court explained that it was convening a community control violation hearing, and Mr. Dod pleaded guilty to the charge. The trial court accordingly resentenced Mr. Dod to community control with an order to stay away from M.S. and required him to successfully complete a stint at River City, in order for him to address his anger and other behavioral issues.

**{¶ 4}** Shortly thereafter, on February 5, 2024, ("February 5 hearing") Mr. Dod again appeared before the trial court, after attending River City for only one day, requesting that he be resentenced elsewhere because he felt threatened by other individuals in the program. He acknowledged that the trial court found it important for him to complete a program addressing his behavioral issues, so he requested a second resentencing to the Talbert House long-term program ("Talbert House"). The trial court again noted that the hearing was one for a community control violation, and Mr. Dod pleaded no contest to that charge. Consistent with Mr. Dod's request, the trial court resentenced him to the Talbert House. It warned him that it was running out of options for him, emphasizing that he needed to do what he could to get through the program. At this point, it vaguely informed Mr. Dod that "[i]n the event [he] violate[s] . . . 12 months and 36 months." At no point did the trial court inform Mr. Dod what it meant by "12 months and 36 months," what could potentially be considered a community control violation, or the specific sentences attached to violations.

**{¶ 5}** On February 20, 2024, ("February 20 hearing") Mr. Dod again came before the trial court, explaining his hesitation to attend Talbert House because of the lockdown conditions it presented. Mr. Dod wanted to be in a program that allowed him the opportunity

to see his children and obtain external employment. The trial court admitted that it had few options left for Mr. Dod's path for rehabilitation due to his repeated refusals to complete the programs it had ordered him to complete, which were meant to address his unique rehabilitative needs. The trial court suggested that he explore any eligibility for Veteran's Court, even though it doubted his eligibility, and informed him that it would attempt to restructure his probation. However, the trial court provided no explicit oral statement on the record that it considered his request for a new sentence a violation of community control.

{¶ 6}   In his final hearing on March 18, 2024, ("March 18 hearing") the trial court noted that Mr. Dod was ineligible for Veteran's Court, and thus, it had no other options left but to sentence him to his full 48-month prison sentence because he refused to participate in Talbert House. The trial court expressed its frustration with Mr. Dod's repeated refusals to complete the lockdown programs. But the court never made an oral finding on the record that Mr. Dod's request to attend a program besides Talbert House constituted a violation of his community control conditions. The trial court merely noted such a finding in its judgment entry, but it never actually informed Mr. Dod of this determination. Mr. Dod now challenges this sentence and the procedures the trial court followed in reaching its conclusion.

## II.

{¶ 7}   In his first assignment of error, Mr. Dod contends that the trial court lacked jurisdiction to modify his sentence to Talbert House because it never explicitly found that he violated his community control. In relation to this finding, or the lack thereof, he also asserts that the trial court failed to afford him his due process rights.

{¶ 8}   As a question of law, an appellate court reviews a trial court's jurisdiction under a de novo standard of review. *State v. Cintron*, 2022-Ohio-305, ¶ 11 (8th Dist.); *see In re R.R.*, 2024-Ohio-1382, ¶ 12 (1st Dist.), quoting *J.A.N. v. J.M.N.*, 2022-Ohio-41, ¶ 32 (5th

Dist.). We accordingly "review[] the judgment independently and 'without deference to the trial court's determination.'" *City of Cincinnati v. White*, 2020-Ohio-1231, ¶ 15 (1st Dist.), quoting *State v. Linnen*, 2005-Ohio-6962, ¶ 9 (10th Dist.).

{¶ 9} When a trial court sentences a defendant to community control and journalizes its entry, the sentence is typically considered final. *See State v. Rork*, 2020-Ohio-2927, ¶ 6 (1st Dist.) ("[A] criminal sentence attains finality when a court enters a judgment of conviction satisfying Crim.R. 32, setting forth (1) the fact of conviction, (2) the sentence, (3) the signature of the judge and (4) entry on the journal by the clerk of court."); *State v. Carlisle*, 2011-Ohio-6553, ¶ 11 ("A criminal sentence is final upon issuance of a final order."). Due to its finality, such a sentence cannot be reconsidered or modified by the trial court itself unless there has been a violation of the terms of that sentence (and the appropriate procedures are followed) or if an appropriate postjudgment motion is filed. *See id.* at ¶ 7; *see also State v. Beyersdoerfer*, 2017-Ohio-9281, ¶ 7 (1st Dist.), citing *State v. Saxon*, 2017-Ohio-93, ¶ 12 (8th Dist.).

{¶ 10} Here, once the trial court sentenced Mr. Dod to the Talbert House and journalized the sentence, the judgment was final.[1] Therefore, the court lacked jurisdiction to modify that sentence on its own accord without first finding that Mr. Dod violated community control or upon an appropriate motion alleging such. But here, the trial court modified the Talbert House sentence without ever explicitly finding any violation. The State contends that when Mr. Dod voluntarily refused to enter Talbert House and admitted such

---

[1] The State contends that it's possible that the order wasn't final if Mr. Dod had not been sent to Talbert House yet, citing *State v. Roberson*, 2021-Ohio-4016, ¶ 11 (8th Dist.) ("In criminal cases, a judgment is not considered final until the sentence has been ordered into execution."). But that case relies on *State v. Carlisle*, 2010-Ohio-3407, ¶ 10 (8th Dist.), which the Supreme Court subsequently reviewed and essentially rejected that reasoning because it was premised on an outdated concept of jurisdiction: "As a consequence, the case law that appears to support Carlisle's position suffers from a fundamental flaw: it relies on now-repealed statutes." *State v. Carlisle*, 2011-Ohio-6553, ¶ 13. The Supreme Court's decision in *Carlisle* controls our jurisdictional inquiry.

to the trial court at the February 20 hearing, it constituted a nontechnical violation, granting the trial court jurisdiction to modify the sentence and ultimately resentence him to his full prison term. *See State v. Elliot*, 2023-Ohio-1459, ¶ 13 (1st Dist.), quoting *State v. Nelson*, 2020-Ohio-3690, ¶ 26 ("[A] nontechnical violation is one that 'concerns a condition of community control that was "specifically tailored to address" matters related to the defendant's misconduct or if it can be deemed a "substantive rehabilitative requirement which addressed a significant factor contributing to" the defendant's misconduct.'").

{¶ 11} While that may be the case, the State never filed a motion alleging a community control violation, nor did the trial court advise Mr. Dod that he had violated his community control conditions. Unlike the January and February 5 violation hearings, the trial court never indicated that it was convening for a community control violation at the March 2024 hearing, and importantly, Mr. Dod never entered any type of plea to the violation. This court in *Beyersdoerfer* held that a trial court's sentence to prison for a community control violation constituted reversible error when there was "[n]o probation violation [] ever filed" and "[t]he court made no findings and sentenced Beyersdoerfer to . . . imprisonment." *Beyersdoerfer* at ¶ 3. Additionally, the Supreme Court of Ohio has held that "'following a community control violation, the trial court conducts a second sentencing hearing' . . . '[and] the court sentences the offender anew and must comply with the relevant sentencing statutes.'" *State v. Jackson*, 2016-Ohio-8127, ¶ 11, quoting *State v. Fraley*, 2004-Ohio-7110, ¶ 17 and *State v. Heinz*, 2016-Ohio-2814, ¶ 15. In sentencing an offender, the trial court is required to "inform the offender of the . . . finding of the court . . . ." R.C. 2929.19(A).

{¶ 12} At no time during the February 5, February 20, or March 18 hearings did the trial court explicitly inform Mr. Dod that a refusal to attend the program constituted a violation. By never orally finding on the record at the February 20 or March 18 hearings that Mr. Dod had violated his community control conditions, the trial court failed to make

findings before sentencing him to prison. To be sure, the trial court made comments that his options were running out, but it never made any definitive finding on the record. And at no point did the trial court indicate that it was convening a community control violation hearing, as it had done with each previous violation at the January and the February 5 hearings.

{¶ 13} While we can deduce that the trial court probably intended to convene a community control violation hearing and to find Mr. Dod guilty of violating his community control, that is not the governing test. These procedures must be followed to ensure that: (a) the defendant knows what is happening; and (b) the trial court stays within the bounds of its jurisdiction. Without that explicit, oral violation determination, the trial court lacked jurisdiction to modify its own final sentence. Therefore, we hold that the trial court erred when it resentenced Mr. Dod to his full 48-month prison sentence, and thus, we sustain his first assignment of error and vacate that sentence. This determination obviates the need to rule on Mr. Dod's claim that his due process rights were violated.

III.

{¶ 14} Even though our disposition of the first assignment of error is dispositive, we feel it important to address Mr. Dod's second assignment of error because that represents an independent ground for relief, and it could become relevant to any further proceedings.

{¶ 15} In his second assignment of error, Mr. Dod asserts that the trial court failed to give him the statutorily-required warnings under R.C. 2929.19(B)(4) when he was resentenced to Talbert House. This presents an independent basis for reversing the trial court's judgment.

{¶ 16} A trial court sentencing an offender must warn them that "if the conditions of [community control] are violated, if the offender commits a violation of law, or if the offender leaves [the] state without the permission of the court or [their] probation officer, the court

may impose . . . a prison term . . . and shall indicate the range" of such term. R.C. 2929.19(B)(4). In reviewing a trial court's prison sentence subsequent to a community control violation, the appellate court must verify that the sentencing court "'strictly complied with certain statutory-notification requirements.'" *State v. Thompson*, 2023-Ohio-3722, ¶ 7 (1st Dist.), quoting *State v. Ward*, 2021-Ohio-1320, ¶ 2 (1st Dist.). The sentencing court must provide warnings that "'inform[s] the offender in "straightforward and affirmative language" of both the actions that would trigger a consequence and the nature of the possible consequences.'" *State v. Harris*, 2024-Ohio-1865, ¶ 15 (1st Dist.), quoting *Thompson* at ¶ 11. If the trial court fails to give such warnings, it "'may not later impose a prison term as a consequence for a community control violation.'" *Id.*, quoting *Thompson* at ¶ 10.

{¶ 17} Mr. Dod argues that the trial court in his case entirely failed to give him these warnings when it sentenced him to Talbert House at the February 5 hearing because it made no mention of the violation-triggering events outlined in the statute, nor did it admonish him that such violations could result in specific prison sentences. In reviewing the relevant transcripts, we agree. The State insists that the trial court's vague warnings that Mr. Dod cannot just claim he does not like Talbert House and its edict to him to do what he can to get through it, coupled with the notification in the journalized entry, was enough to satisfy the statutory requirements. The trial court only warned Mr. Dod at the February 5 hearing that, "[i]n the event that [he] violates . . . 12 months and 36 months," without any explanation as to what a violation may look like. This was insufficient to provide the appropriate notice to Mr. Dod for two reasons.

{¶ 18} First, the trial court never notified Mr. Dod that if he were to violate his community control, violate the law, or leave the state without permission, he could face specific prison sentences. Again, this information was only noted in the trial court's journalized entry but never explained in "straightforward and affirmative language" to Mr.

8

Dod himself. *See Harris* at ¶ 15, quoting *Thompson* at ¶ 11. The sentencing court is required to "'explain the actions of the defendant that trigger a consequence.'" *Harris* at ¶ 15, quoting *Thompson* at ¶ 8. It failed to do that here.

{¶ 19} Second, the trial court's opaque reference to the possible sentences was wholly inconsistent with the governing statutory requirements. *See Thompson*, 2023-Ohio-3722, at ¶ 9 (1st Dist.), quoting *State v. Brooks*, 2004-Ohio-4746, ¶ 19 ("To comply with the literal terms of the statute, the judge should not simply notify the offender that if the community control conditions are violated, he or she will receive . . . some [] indefinite term, such as 'up to 12 months.'"). Here, the trial court never explained what violations might trigger each prison sentence or even what the specific prison sentences may be. The trial court vaguely referred to "12 months and 36 months," but that is not enough. The trial court never informed Mr. Dod that he "could face a defined term of incarceration" nor "the potential consequences of his actions." *See Thompson* at ¶ 12. While we appreciate that the trial court was essentially using shorthand, it requires only a sentence or two of elaboration to explain the consequences to the defendant, and the trial court must do so, consistent with our precedent.

{¶ 20} It is the duty of the trial courts to ensure that defendants understand which of their actions may trigger a prison sentence. They are the individuals meant to be protected by the statute requiring such clear warnings. The trial court must do this at each resentencing. Even if the appropriate warnings were given to Mr. Dod in any of his previous sentencings, it did not obviate the trial court's duty to reinform him of these warnings at the February 5 hearing. *See Harris*, 2024-Ohio-1865, at ¶ 15 (1st Dist.), quoting *Fraley*, 2004-Ohio-7110, at ¶ 17 ("At a community-control-violation hearing, 'the court sentences the offender anew and must comply with the relevant sentencing statutes.'"). A complete failure by the trial court to explain both what may constitute a violation and the specific prison

sentences attached to such violations requires this court to sustain Mr. Dod's second assignment of error.

IV.

{¶ 21} Mr. Dod's third assignment of error that the trial court failed to consider the sentencing guidelines and factors set forth in R.C. 2929.11 and 2929.12 is rendered moot due to the disposition of his first two assignments.

\* \* \*

{¶ 22} Based on the foregoing reasons, we sustain Mr. Dod's first two assignments of error, and therefore, his third assignment of error is moot. We reverse the trial court's judgment, vacate Mr. Dod's prison sentence, and remand this cause for proceedings consistent with this opinion and the law.

Judgment reversed, sentence vacated, and cause remanded.

**ZAYAS, P.J.,** and **KINSLEY, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.